## STATE OF WEST VIRGINIA
## SUPREME COURT OF APPEALS

**FILED**

**November 19, 2018**

EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

*In re* **J.C.**

**No. 18-0559** (Roane County 17-JA-83)

## MEMORANDUM DECISION

Petitioner Father J.R., by counsel Marc A. Moore, appeals the Circuit Court of Roane County's May 18, 2018, order terminating his parental rights to J.C.[1] The West Virginia Department of Health and Human Resources ("DHHR"), by counsel Lee Niezgoda, filed a response in support of the circuit court's order. The guardian ad litem ("guardian"), Ryan M. Ruth, filed a response on behalf of the child in support of the circuit court's order. Petitioner filed a reply. On appeal, petitioner argues that the circuit court erred in adjudicating him as an abusing parent, denying his motion for a post-adjudicatory improvement period, and finding there was no reasonable likelihood that he could substantially correct the conditions of neglect in the near future.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the Rules of Appellate Procedure.

In February of 2017, a petition was filed to initiate abuse and neglect proceedings involving J.C.'s sibling and mother. An amended petition was filed to add additional infant and adult respondents, including petitioner and the child at issue in this appeal. There were no allegations of abuse and neglect against petitioner until the third amended petition was filed on November 14, 2017. According to the DHHR, it was reported that petitioner repeatedly sent the then-five-year-old child to school in ill-fitting, urine soaked clothing. It was also reported that petitioner failed to provide proper supervision for the child. Petitioner contested the preliminary hearing held on November 16, 2017. However, the circuit court found that the child was in imminent danger at the time of his removal from petitioner's custody.

---

[1]Consistent with our long-standing practice in cases with sensitive facts, we use initials where necessary to protect the identities of those involved in this case. *See In re K.H.*, 235 W.Va. 254, 773 S.E.2d 20 (2015); *Melinda H. v. William R. II*, 230 W.Va. 731, 742 S.E.2d 419 (2013); *State v. Brandon B.*, 218 W.Va. 324, 624 S.E.2d 761 (2005); *State v. Edward Charles L.*, 183 W.Va. 641, 398 S.E.2d 123 (1990).

On December 18, 2017, the circuit court held an adjudicatory hearing during which the DHHR presented evidence that a Child Protective Services ("CPS") worker and a service provider witnessed the child at school wearing ill-fitting clothing and with extremely poor hygiene. According to the DHHR, the child's school reported ongoing problems with the child's appearance and hygiene. The CPS worker testified that, after noticing the overwhelming smell of urine, she observed the child urinate on himself, his clothing, and the floor. She described the child as "very dirty" with dirty ears and fingernails and no sign that he had recently bathed. The DHHR also presented evidence that petitioner frequently left the child alone and unsupervised. Accordingly, petitioner was adjudicated as an abusing parent. A dispositional hearing was scheduled for February of 2018, but continued multiple times for an evaluation of petitioner and his medical records, due to his assertion that he was mentally ill.

In March of 2018, the circuit court suspended petitioner's visitation with the child because he threatened the visitation supervisor. In April of 2018, petitioner moved for a post-adjudicatory improvement period. On May 14, 2018, the circuit court held a dispositional hearing. At the beginning of the hearing, petitioner moved for a continuance in order to participate in therapy to address his mental health issues. The circuit court denied the continuance. According to the circuit court's dispositional order, the DHHR presented evidence of petitioner's psychological evaluation. The evaluation reported that while petitioner expressed affection for his son, he refused to acknowledge his parental deficits and use of poor judgment. The examiner opined that petitioner would need psychotherapy, counseling, and anger management, but his prognosis for parental improvement was found to be "extremely guarded to poor." The DHHR also presented evidence that during a visit, in front of the child, petitioner screamed at and repeatedly threatened to hit the visitation supervisor when the supervisor requested proof that petitioner completed the requisite drug screening. Petitioner was also ordered to cease communication with the DHHR offices in both Roane and Jackson Counties after repeated threatening telephone conversations. However, in his testimony, petitioner minimized his actions toward the visitation supervisor and the DHHR, claiming he was trying to protect the child. Counsel for petitioner informed the circuit court that petitioner suffered from bipolar disorder. Prior to the dispositional hearing, petitioner started participating in counseling and was prescribed Zoloft.

According to the circuit court's dispositional order, petitioner "personally questions whether he has any mental illness or defect affecting his ability to properly parent" the child. The circuit court found that petitioner failed to acknowledge the conditions of abuse and neglect and blamed others for his problems. Further, according to the circuit court's order, petitioner's attitude and threatening behaviors were a danger to the child and service providers. The circuit court found there was no reasonable likelihood that petitioner could substantially correct the conditions of neglect in the near future and that termination of his parental rights was in the child's best interests. Ultimately, the circuit court terminated petitioner's parental rights and

denied his motion for a post-adjudicatory improvement period in its May 18, 2018, dispositional order. It is from this order that petitioner appeals.[2]

The Court has previously established the following standard of review in cases such as this:

> "Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." Syl. Pt. 1, *In Interest of Tiffany Marie S.*, 196 W.Va. 223, 470 S.E.2d 177 (1996).

Syl. Pt. 1, *In re Cecil T.*, 228 W.Va. 89, 717 S.E.2d 873 (2011).

On appeal, petitioner first argues that the circuit court erred in finding clear and convincing proof of abuse and neglect. Petitioner further argues that the circuit court erred in adjudicating him as an abusing parent because no allegation regarding his mental health condition was included in the petition. In support, he asserts that if an allegation regarding his mental health condition was included in the petition, he "would have been able to more effectively consider what admissions could or should have been made" at the adjudicatory hearing. We do not find this argument persuasive.

We have held that

> "W.Va. Code [§] 49-6-2(c) [now West Virginia Code § 49-4-601(i)], requires the [DHHR], in a child abuse or neglect case, to prove 'conditions existing at the time of the filing of the petition . . . by clear and convincing [evidence].' The statute, however, does not specify any particular manner or mode of testimony or evidence by which the [DHHR] is obligated to meet this burden." Syllabus Point 1, *In Interest of S.C.*, 168 W.Va. 366, 284 S.E.2d 867 (1981).

Syl. Pt. 1, *In re Joseph A.*, 199 W.Va. 438, 485 S.E.2d 176 (1997) (citations omitted). Further, pursuant to West Virginia Code § 49-1-201, a neglected child is one

---

[2]The child's mother voluntarily relinquished her parental rights to the child in August of 2018. According to respondents, the permanency plan for the child is adoption by his maternal aunt.

[w]hose physical or mental health is harmed or threatened by a present refusal, failure or inability of the child's parent . . . to supply the child with necessary food, clothing, shelter, supervision, medical care or education, when that refusal, failure or inability is not due primarily to a lack of financial means on the part of the parent. . . .

The circuit court had substantial evidence to adjudicate petitioner based upon his neglect of the child. A CPS worker observed the child and testified at the adjudicatory hearing that the child went to school in clothing that was dirty and ill-fitting. She also testified that he appeared not to have recently bathed. She witnessed the child urinate on himself and on the floor. Further, the evidence showed that petitioner left the five-year-old child unsupervised on multiple occasions. To the extent petitioner argues that the DHHR failed to include an allegation regarding petitioner's mental health condition in the petition, the DHHR had no reason to allege any mental health issues because petitioner failed to assert any mental health condition until the hearing that was originally scheduled for the disposition of the matter. No evidence presented during the preliminary or adjudicatory hearings supported a finding that petitioner's mental illness contributed to the neglect of the child. Moreover, based upon the overwhelming evidence of the neglect of the child, we find no error in the circuit court's adjudication of petitioner as an abusing parent.

Petitioner next argues that the circuit court erred in denying his motion for a post-adjudicatory improvement period. In support, petitioner asserts that the DHHR did not make a thorough effort to determine whether petitioner could adequately care for the child with intensive long-term assistance.[3] We disagree. Pursuant to West Virginia Code § 49-4-610(2), the circuit court may grant a parent a post-adjudicatory improvement period if the parent "moves in writing for the improvement period" and "demonstrates, by clear and convincing evidence, that the [the parent] is likely to fully participate in the improvement period[.]" Additionally, we have stated that "West Virginia law allows the circuit court discretion in deciding whether to grant a parent an improvement period." *In re M.M.*, 236 W.Va. 108, 115, 778 S.E.2d 338, 345 (2015).

---

[3]Petitioner relies on a case in which this Court held

"[w]here allegations of neglect are made against parents based on intellectual incapacity of such parent(s) and their consequent inability to adequately care for their children, termination of rights should occur only after the social services system makes a thorough effort to determine whether the parent(s) can adequately care for the children with intensive long-term assistance. In such case, however, the determination of whether the parents can function with such assistance should be made as soon as possible in order to maximize the child(ren)'s chances for a permanent placement."

Syl. Pt. 4, *In re Billy Joe M.*, 206 W.Va. 1, 521 S.E.2d 173 (1999). However, petitioner fails to acknowledge that no such allegations were made in the instant matter. Therefore, *In re Billy Joe M.* does not apply to the instant matter.

Again, petitioner did not assert any mental health issues until several months into the proceedings. Thereafter, the DHHR properly sought to determine the effects of his mental health issues by providing petitioner with a psychological evaluation. The psychological evaluation revealed that petitioner's prognosis for parental improvement, even with psychotherapy, counseling, and anger management services, was "extremely guarded to poor." The evaluation also reported that petitioner was unwilling to acknowledge his own parental deficits and use of poor judgment. We have held that

> [i]n order to remedy the abuse and/or neglect problem, the problem must first be acknowledged. Failure to acknowledge the existence of the problem, i.e., the truth of the basic allegation pertaining to the alleged abuse and neglect or the perpetrator of said abuse and neglect, results in making the problem untreatable and in making an improvement period an exercise in futility at the child's expense.

*In re Timber M.*, 231 W.Va. 44, 55, 743 S.E.2d 352, 363 (2013) (quoting *In re Charity H.*, 215 W.Va. 208, 217, 599 S.E.2d 631, 640(2004)). Throughout the proceedings, petitioner failed to take responsibility for his actions or acknowledge the issues of neglect. At the dispositional hearing, petitioner questioned whether his mental health issues affected his ability to properly parent the child. Further, petitioner did not demonstrate that he would substantially comply with a post-adjudicatory improvement period because he failed to cooperate with the DHHR and service providers. Petitioner repeatedly called and threatened the DHHR and threatened to hit a visitation supervisor when the supervisor asked for proof that petitioner took a drug screen prior to visitation with the child. At the dispositional hearing, petitioner attempted to minimize his hostile behaviors. Based on this evidence, a post-adjudicatory improvement period would have been futile and the circuit court did not abuse its discretion in denying petitioner the same.

Finally, we find no error in the circuit court's termination of petitioner's parental rights. Petitioner argues that the circuit court erroneously found no reasonable likelihood that he could substantially correct the conditions of neglect in the near future. Petitioner asserts that with counseling and medication, he has exhibited signs of success.[4] We do not find this argument persuasive. West Virginia Code § 49-4-604(c) clearly indicates that a situation in which there is no reasonable likelihood the conditions of abuse and neglect can be substantially corrected includes one in which the abusing parent "demonstrated an inadequate capacity to solve the problems of abuse or neglect on their own or with help." Pursuant to West Virginia Code § 49-4-604(b)(6), circuit courts are directed to terminate parental rights upon finding that there is no reasonable likelihood the conditions of neglect can be substantially corrected in the near future and when necessary for the child's welfare.

While petitioner argues that no assessment regarding his parenting capabilities was made, petitioner fails to acknowledge the psychological reports. As discussed above, the psychological assessment revealed that petitioner needed extensive counseling and services, and that his

---

[4]Any progress made by petitioner following disposition cannot be considered on appeal because there is no evidence in the record to support it.

prognosis for parental improvement was "extremely guarded to poor." The assessment also revealed that petitioner was unwilling to acknowledge his own parental deficits, which was apparent throughout the proceedings. On appeal, petitioner makes no argument that returning the child to his care would be in the child's best interests. Due to the neglect suffered by the child and the hostile actions by petitioner during the proceedings, the termination of petitioner's parental rights was necessary for the child's welfare. To offer petitioner additional time or services would only delay permanency for the child. Additionally, because petitioner refused to acknowledge the issues of neglect in the instant proceedings, it is clear that there was no reasonable likelihood that he could correct those issues. Therefore, we find no error in the circuit court's termination of petitioner's parental rights.

For the foregoing reasons, we find no error in the decision of the circuit court, and its May 18, 2018, order is hereby affirmed.

Affirmed.

**ISSUED**:  November 19, 2018


**CONCURRED IN BY**:

Chief Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Tim Armstead
Justice Evan H. Jenkins
Justice Paul T. Farrell sitting by temporary assignment